## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:  Danielle N. Smith,        )       Chapter 7
           )
           )       Bankr. No. 24-03007
           )
    Debtor.        )       Chief Judge Jacqueline Cox

**Memorandum Opinion on Motion to Examine Fees of Debtor's Attorney (Dkt. 24)**

### Introduction

Chapter 7 bankruptcy cases differ from those filed under other chapters of the Bankruptcy Code.[1]  Other chapters have remedies whereby an attorney can be paid either by the debtor or through a plan of reorganization after the filing date.  No such postpetition remedy is spelled out in the Bankruptcy Code for chapter 7 cases.

### Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  This matter is a core proceeding under 28 U.S.C. § 157(b)(A), a matter concerning the administration of the estate.

### Background

Filing a chapter 7 case triggers the automatic stay which bars attorneys who file chapter 7 cases for debtors from collecting prepetition debts without leave of court.  *See* 11 U.S.C. § 362(a).  The granting of a discharge in chapter 7 cases bars attorneys owed funds for investigating and filing chapter 7 cases from collecting those prepetition debts.  11 U.S.C. §

---

[1] All references to the Bankruptcy Code sections are to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

727(b).

When faced with this problem in *In re Bethea,* the Seventh Circuit discussed the

possibility of debtors rehiring their bankruptcy counsel after filing of a chapter 7 case to perform

postpetition services:

> Those who cannot prepay in full can tender a smaller retainer for
> prepetition work and later hire and pay counsel once the proceeding
> begins—for a lawyer's aid is helpful in prosecuting the case as well as in
> filing it.

*In re Bethea,* 352 F.3d 1125, 1128 (7th Cir. 2003).

This court commented on *Bethea* in *In re Griffin*:

> In other words, the future debtor and his bankruptcy counsel would both
> voluntarily enter into a prepetition contract that requires counsel to
> perform legal services only to the point of filing the bankruptcy case (and
> perhaps a handful of post-petition services that might include the § 341
> meeting); then, if further post-petition services were desirable or
> necessary, the debtor would have to seek to re-retain the same (or possibly
> another) bankruptcy attorney for an additional fee that the debtor would
> not be contractually obligated to pay until after the case is filed.  If Chapter
> 7 debtors' attorneys proceed in reliance on the dictum in that opinion, they
> ought to proceed with caution, thoroughly considering the implications of
> such an arrangement under the Illinois Rules of Professional Conduct.

*In re Griffin*, 313 B.R. 757, 766-67 (Bankr. N.D. Ill. 2004).

In response, attorneys have been bifurcating their fee agreements with chapter 7 debtors,

dividing their representation into prepetition and postpetition contracts.  Fees owed for

prepetition work on behalf of a chapter 7 debtor would be discharged; fees owed under a post-

petition contract would be collectible as only prepetition debts get discharged under chapter 7.

Ramona Elliott, the Acting Director of the Executive Office for the U.S. Trustee issued a

memorandum in 2022 entitled Guidelines for United States Trustee Program Enforcement

Related to Bifurcated Chapter 7 Fee Agreements. The program does not condemn split-fee agreements but cautions that absent contrary local authority they have to be fair and reasonable, entered into with the debtor's fully informed consent and be adequately disclosed. Memorandum from Ramona D. Elliot, Acting Director, Executive Office for U.S. Trustees, to United States Trustees (June 10, 2022) (https://www.justice.gov/ust/page/file/1511976/dl?inline).

Pursuant to statutory authority under 11 U.S.C. § 586 to monitor and appear in all bankruptcy cases U.S. Trustee Patrick S. Layng[2] filed a motion asking the court to examine the fees of Attorney Xiaoming Wu and the Borges & Wu, LLC law firm[3] in connection with the above-captioned bankruptcy case pursuant to 11 U.S.C. § 329(b).[4] Section 329(a) of the Bankruptcy Code requires attorneys who represent debtors, whether or not the attorney applies for compensation, to file with the court a statement of the compensation paid or agreed to be paid.

Section 329(b) states that if the compensation exceeds the reasonable value of the services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to the bankruptcy estate or to the entity that made the payment.

The motion seeks a finding that the retention agreements executed herein by the Debtor and Mr. Wu do not comply with 11 U.S.C. §§ 526 and 528 and are void for that reason. The

---

[2] Adam Brief is now the Acting United States Trustee for the Northern District of Illinois.

[3] Because our court allows attorneys to appear, not law firms, the motions will be resolved as to Mr. Wu, not the law firm. Local Bankruptcy Rule 2040-4(A)(3).

[4] On October 23, 2024, the court heard the joint trial of motions to examine the fees of Attorney Xiaoming Wu in five separate chapter 7 cases pending in the Bankruptcy Court for the Northern District of Illinois: *In re Smith*, No. 24-03007; *In re Jude-Weathersby*, No. 24-03393; *In re Wright*, No. 24-03409; *In re Knighten, Jr.*, No. 24-03720 and *In re Green*, No. 24-03890.

motion also asks that Mr. Wu be enjoined from violating 11 U.S.C. § 526, as allowed by 11

U.S.C. § 526(c).   In addition. the motion seeks civil penalties against Mr. Wu pursuant to section

526(c)(5).

On February 28, 2024, Debtor, Danielle N. Smith, (the "Debtor") and Mr. Wu executed

an Attorney Retention Contract (the "Prepetition Contract").  Mr. Wu filed the Debtor's petition

for chapter 7 bankruptcy relief on February 29, 2024.  The petition was filed without the

schedules or statement required by 11 U.S.C. § 521.

A Notice of Deficiency was docketed therein on March 1, 2024 informing the Debtor that

several documents had not been filed and that dismissal could result therefrom.  Mr. Wu filed the

Schedules, Statement of Financial Affairs ("SoFA"), other documents and the Debtor's "e-

signature" on March 14, 2024.

The Debtor testified at the October 23, 2024 trial that she was not aware of the Notice of

Deficiency at that time and first became aware of it during a deposition she gave in connection to

the motion to examine fees.  Oct. 23, 2024 Trial Transcript, Docket 46, pp. 125-26.  The U.S.

Trustee argues that Mr. Wu should not have delayed filing the documents in issue as he was

obligated to timely file them under the Attorney Retention Contract but waited to do so until after

the Debtor executed the Contract for Postpetition Services, which purports to have been executed

on March 1, 2024.  *See* Supplemental Disclosure of Compensation, Docket 16, p. 1.

The Debtor's Statement of Financial Affairs ("SoFA"), at line 16, states that she paid $92

for a merged, multi-bureau credit report, credit counseling and debtor education courses in

connection with her case.  Docket 13, ¶ 16.  No other payments are noted therein.  In his initial

compensation disclosure Mr. Wu stated that he agreed to accept and had accepted $0 in

compensation and that the $338 filing fee had been paid.  Compensation Disclosure, Docket 1, p.

8, ¶¶ 1-2.  He noted therein that in return for the above disclosed $0 fee he agreed to render legal

services for all aspects of the bankruptcy case including:

> a. Analysis of the debtor's financial situation, and rendering advice to the debtor
> in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs and plan
> which may be required;
> c. Representation of the debtor at the meeting of creditors and confirmation
> hearing, and any adjourned hearings thereof.
> d, [Other provisions as needed] . . .

*Id.*, ¶ 6a-d.[5]

In discussing the Attorney Retention Contract, which provides a $0 fee, the Debtor

testified she understood that Mr.Wu was going to represent her through the entire case.  Trial

Transcript, Docket 46, pp. 131-33.   She also testified that she understood prepetition services to

encompass "the forms needed to start the process." Transcript, p. 134.   She understood

postfiling legal fees as "fees to utilize the services that the company provided. To pay for their

services." *Id.*, p. 135.

When asked if it was explained why she was signing two different fee agreements, she

said she did not think they were for separate fees; they were both for $2,600 and that one gave a

more thorough breakdown of the amount. *Id.*, p. 138.   She also testified that one fee was for pre-

filing and then one was for the attorney fees. *Id.*  She could not testify on what the different

agreements meant. *Id.*, p. 139.

Paragraph 6(d) of the compensation disclosure form filed on February 29, 2024 states that

---

[5] The Wage Assignment was disclosed as part of the postpetition Contract for Postpetition Service.  Docket
16.  It was not part of the documents filed with the bankruptcy petition on February 29, 2024.

Mr. Wu's representation was conditioned on "debtor entering into an agreement after the filing of the case to pay Attorney for services rendered after filing of the case. Should debtor fail to enter into such an agreement, the court may allow Attorney to withdraw from representation of debtor on motion of attorney." Compensation Disclosure, Docket 1, p. 8, ¶ 6d.

On March 14, 2024, Mr. Wu filed his supplemental disclosure of compensation (the "supplemental disclosure"). Docket 16. Mr. Wu stated therein that since filing the initial compensation disclosure he agreed to accept $2,600 (as anticipated in the prepetition Attorney Retention Contract). He also stated that he received $0 prior to filing the supplemental disclosure. He stated that the balance then due was $2,600. That supplemental disclosure includes the Contract for Postpetition Service and a wage assignment form.

In ¶ 5 of the supplemental disclosure Mr. Wu stated that "[i]n return for the above-disclosed fee, I have agreed to render legal services as follows: Preparation & Filing of Schedules, Statements, Reaffirmation Agreements, Applications as needed, and Representation of Debtor at 341 Meeting of Creditors." The Contract for Postpetition Service was part of that filing. Docket 16, p. 1.

The Contract for Postpetition Service provides that the $2,600 fee for postpetition service covers "all aspects of a pending Chapter 7 case" and that it was a flat-fee advance payment retainer. Docket 16, p. 2, ¶ 2. The U.S. Trustee notes that this statement conflicts with Mr. Wu's compensation disclosure statement at Docket 1, p. 8, which provides that in return for a $0 fee he agreed prepetition to render legal services for all aspects of the bankruptcy case. The prepetition Attorney Retention Contract provided that the Debtor retained the Attorney "for all purposes in the bankruptcy case," subject to exceptions in section 3 (Scope of Representation). Attorney

-6-

Retention Contract, Docket 1, p. 9, ¶ 2.

The Contract for Postpetition Service provides "[f]or payment of the fee Client consents to automatic bank debit/ACH and/or wage assignment." Docket 16, p. 1, ¶ 2.

Included in the supplemental disclosure is an executed wage assignment that does not state what part of the $2,600 remained outstanding. No ACH agreement or authorization was attached nor was there a schedule of payments informing the Debtor what she had to pay and when to pay it. *Id.*, p. 1.

Should Mr. Wu have attached either or both a written, executed ACH agreement that provided amounts and dates of scheduled payments from a specific bank account and a complete wage assignment agreement including details such as the employer's name and a schedule of payments? Yes. The ACH document was not disclosed in Mr. Wu's supplemental compensation disclosure documents filed on March 14, 2024 at Docket 16. The ACH document is included in his response to the motion to examine fees, filed on June 27, 2024 at Docket 30, Exhibit 7. It states that $433.33 ($433.35 in the last month) would be deducted from a bank account on a monthly basis for six months.

The U.S. Trustee complains that Mr. Wu should have attached an executed ACH agreement to the supplemental disclosure. Motion to Examine Fees, Docket 24, p. 11, ¶ 41. That position is correct. Mr. Wu failed to comply with Bankruptcy Rule 2016(b) and Local Bankruptcy Rule 2016-1, as the ACH document was not disclosed in the supplemental compensation disclosure. Did the failure regarding the Wage Assignment document to include more information violate section 329, Bankruptcy Rule 2016 or Local Bankruptcy Rule 2016-1? Possibly. The problem, explained by Bankruptcy Judge Doyle in *In re St. John*, is that "[t]he

wage assignment allows Wu to collect any unpaid amount owed under the CARA[6] [Court

Approved Retention Agreement] directly from the debtor's wages after the bankruptcy case is

dismissed. This type of agreement is prohibited by the court's Local Bankruptcy Rules regarding

the CARA, which permit the court to deny any fee to an attorney who enters into such an

agreement.  Wu's fee application will be denied." *In re St. John*, 2022 WL 4827351, *1 (Bankr.

N.D. Ill. Sept. 30, 2022).  Judge Doyle aptly explained that wage assignments deprive the debtor

of the right to defend against any collection action Wu could file in a non-bankruptcy court.  "Wu

tried to eliminate the need to file a lawsuit against the debtor and thereby eliminate any chance

for the debtor to raise potential defenses (such as that Wu did not perform under the contract.).

The assignment allows Wu to go straight to collection from the debtor's wages without the

procedural safeguards afforded to a defendant in a lawsuit before and after judgment." *Id.*

(internal citation omitted).

The court acknowledges that the use of wage assignments in chapter 13 cases is

prohibited under the CARA regime but that their use in chapter 7 cases has not been prohibited.

The problem is that even though Mr. Wu disclosed the wage assignment document when

he filed his supplemental postpetition disclosure on March 14, 2024, he did not then disclose the

ACH agreement.

The court is not ruling that attorneys who file chapter 7 cases may not use wage

assignments or ACH procedures.  However, Mr. Wu will be enjoined from failing to disclose

---

[6] The Court Approved Retention Agreement regime is a program where, in return for a fixed no-look flat fee of $4,500 in chapter 13 cases, attorneys may file a simplified fee application and agree to a number of conditions. For a full description of the program, *see In re Zambrano*, 2022 WL 16646807, *1-2 (Bankr. N.D. Ill. Nov. 3, 2022).

wage assignments, ACH agreements and other documents that describe payment terms when filing fee disclosures. Such disclosures help bankruptcy courts and the U.S. Trustee to monitor how attorney fees are assessed in chapter 7 cases and how the fees are collected.

### Section 329 of the Bankruptcy Code and Bankruptcy Rules 2016 and 2017

Section 329(a) of the Bankruptcy Code requires attorneys who represent debtors seeking bankruptcy relief to file with the court a statement of the compensation paid or agreed to be paid by or on behalf of debtors. Section 329(b) states that if the compensation exceeds the reasonable value of the services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to the bankruptcy estate or to the entity that made the payment. Section 329 reflects Congress' concern that a debtor's payments to a bankruptcy attorney present a potential for evasion of creditor protection provisions, warranting careful scrutiny. H.R. REP. 95-595, 95th Cong., 1st Sess. 329 (1977), *U.S. Code Cong. & Admin. News 1978*, p. 5963.

Federal Rule of Bankruptcy Procedure 2016 requires attorneys to file the statement required by Bankruptcy Code section 329 within 14 days after the order for relief, or another time as the court may direct.

Local Bankruptcy Rule 2016-1 requires a debtor's attorney to file not only the disclosure statement, but also to attach "[e]very agreement between a debtor and an attorney for the debtor that pertains, directly or indirectly, to the compensation paid or given, or to be given, to or for the benefit of the attorney." Local Bankruptcy Rule 2016-1. The court finds that Local Bankruptcy Rule 2016-1 requires that ACH and Wage Assignments be disclosed.

Federal Rule of Bankruptcy Procedure 2017 provides that on the motion of any party or on its own initiative, a court may determine whether any payment of money or any transfer of

property by the debtor, made in contemplation of filing for bankruptcy relief, is excessive.

The court has to determine the reasonable value of services rendered and determine whether an excess payment was made by comparing that value to the value given. Even if an attorney engages in a pattern of conduct in a number of cases, the court has to examine services rendered in each case to determine their value. 9 COLLIER ON BANKRUPTCY ¶ 2017.11 (Richard Levin & Henry J. Sommer eds., 16th ed.).

Because the court will order relief for the Debtor under section 526 which allows the voiding of contracts that are misleading, without determining whether their fee terms are excessive, it will not be necessary to determine the reasonable value of the services rendered by Mr. Wu.

**Relief Requested**

The United States Trustee asks the court to find that neither the Attorney Retention Contract nor the Contract for Postpetition Service complies with the material requirements of sections 526 or 528 of the Bankruptcy Code and for that reason find that the agreements are void. The U.S. Trustee alleges that Mr. Wu omitted critical information from his disclosures regarding his representation of the Debtor because it is difficult to tell whether he was obligated to prepare and file schedules and statements under the prepetition Attorney Retention Contract or under the Contract for Postpetition Service. His initial disclosure states that he was so obligated prepetition as the Attorney Retention Contract provides that he was to provide all services in the bankruptcy case, unless expressly excepted therein. The problem is that his supplemental disclosure, which includes the Contract for Postpetition Service, states that the $2,600 fee covered all aspects of the pending chapter 7 case except for matters listed separately. Is this a

-10-

material inconsistency that makes it impossible to tell whether or when Mr. Wu intended to provide services in the case? Yes, this is a material, misleading inconsistency that justifies finding that the contracts are void.

In 2004 in *In re Griffin*, in the context of a matter where a debtor was loaned funds by a third party to redeem a vehicle, where the loan proceeds included funds for legal fees, this court noted in connection with bifurcated agreements:

> The trick here is that the post-petition contract must really be a post-petition contract. That is, the legally operative events—the offer, acceptance, and exchange of consideration (either a promise to pay or an act of payment in exchange for a promise to render services)—must in fact occur after the date of the Chapter 7 filing to qualify as a claim arising post-petition and falling outside the scope of § 362(a)(6).

*In re Griffin*, 313 B.R. 757, 769-70 (Bankr. N.D. Ill. 2004).

One solution to this problem would be to make prepetition debts owed to bankruptcy counsel nondischargeable to obviate attorneys and debtors having to execute two contracts, one prepetition and another postpetition, as recommended by the American Bankruptcy Institute. *Final Report of the ABI Commission on Consumer Bankruptcy*, AMERICAN BANKRUPTCY INSTITUTE, pp. 94-95, https://consumercommission.abi.org (2019).

Mr. Wu's duty to perform services was conditioned on the Debtor executing an additional agreement postpetition. It is difficult to discern exactly what he was required to do postpetition after the anticipated execution of the postpetition contract since he was already obligated to perform the same services prepetition.

In *In re Brown,* Florida Bankruptcy Judge Isicoff noted that while a chapter 7 lawyer has to be paid by the debtor, the lawyer cannot look to the estate or to the debtor postpetition for

-11-

payment of fees for services rendered or to be rendered if the obligation to pay the fee arose prepetition. 631 B.R. 77, 85 (Bankr. S.D. Fla. 2021). Judge Isicoff also noted at p. 93 that "[t]here is no question that using the postpetition agreements to pay for prepetition services is not acceptable, since that is merely seeking to do indirectly what is prohibited directly," citing *Hazlett*, 2019 WL 1567751, at *9 ("Fees for prepetition services should not be directly or surreptitiously slipped into the fee charged for postpetition services. If this happens, it could be cause for disgorgement under § 329 or other sanctions."). *See also In re Baur*, 658 B.R. 930, 946 (E.D. Mo. 2024) ("[w]e conclude that the Pre and Post-Filing Agreements do not clearly describe the services to be provided by the Firm. Thus, they do not comply with Section 528(a)(1)." (footnote omitted)).

## Section 526 of the Bankruptcy Code

Section 526 places restrictions on debt relief agencies in connection with their efforts to provide services to persons seeking bankruptcy relief. Attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies within the meaning of this Bankruptcy Code provision. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 239 ("[w]e hold that attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies . . ."). An "assisted person" is a person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $226,850. 11 U.S.C. § 101(3).

Section 526(a)(1) states that a debt relief agency shall not fail to perform any service it told an assisted person it would provide. Mr. Wu did not violate this provision; he actually performed the service he said he would provide.

Section 526(a)(2) states that a debt relief agency shall not make any statement that is

-12-

untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading. The court finds that Mr. Wu violated section 526(a)(2), as his promises to perform the same services in both the prepetition contract and the postpetition contract are misleading because it is not clear whether he was to perform those services prepetition for $0 or postpetition for $2,600.

Section 526(a)(3) states that a debt relief agency shall not misrepresent to any assisted person, directly or indirectly, affirmatively or by material omission regarding his services to be provided or the benefits or risks that may result if such person becomes a debtor in a bankruptcy case. Mr. Wu violated section 526(a)(3) by omitting to make it clear in the Contract for Postpetition Service that he was already obligated to represent the Debtor pursuant to the Attorney Retention Contract. His initial disclosure of compensation statement provides:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjoined hearings thereof;
> d. Attorney's representation of debtor is conditioned on debtor entering into an agreement after the filing of the case to pay Attorney for services rendered after filing of the case. Should debtor fail to enter into such an agreement, the court may allow Attorney to withdraw from representation of debtor on motion of attorney.

Disclosure of Compensation of Attorney for Debtor, Docket 1, p. 8.

The court finds that Mr. Wu should not have charged the Debtor $2,600 postpetition for services he agreed to provide prepetition for $0.

-13-

Pursuant to section 526(c)(1) the court finds that the contracts executed herein between Mr. Wu and the Debtor are void and unenforceable as Mr. Wu has failed to comply with the material requirements of section 526.

## Section 528 of the Bankruptcy Code

Section 528 requires attorneys, as debt relief agencies, not later than five (5) days after bankruptcy assistance is provided, and prior to filing a bankruptcy petition on such person's behalf, to execute a written contract that clearly and conspicuously explains the services the attorney will provide to such assisted person, the fees or charges for such services, and the terms of payment. By not disclosing the ACH agreement with the supplemental disclosure, Mr. Wu failed to completely disclose the terms of payment. This violated section 528 as the agreements were not clear. Section 526(c)(1)'s remedy of voiding offending agreements applies to agreements that violate section 528: "Any contract . . . that does not comply with the material requirements of this section, section 527 or section 528 shall be void . . ." 11 U.S.C. § 526(c)(1).

## Mr. Wu's Contentions

In his response pleading to the U.S. Trustee's motion to examine fees, Mr. Wu asserts that officials from the U.S. Trustee's Office advised him to structure his contract documents in their current form. Response, Docket 30, p. 2. However, he did not present evidence of this at the trial of this matter.[7]

Mr. Wu argues that Local Bankruptcy Rule 2090-5(B) states that an attorney who files a

---

[7] In *In re St. John* where Judge Doyle sanctioned Mr. Wu for improperly using a wage assignment form to collect his fee in a chapter 13 case, he argued that the judges of the district acquiesced in his practice by not discovering it sooner, waiving the court's authority to deny his fee applications. Judge Doyle rejected this suggestion. *In re St. John*, 2022 WL 4827351, *2 (Bankr. N.D. Ill. Sept. 30, 2022). Mr. Wu prefers to blame others for his conduct.

petition is deemed to appear as attorney of record on behalf of the debtor for all purposes in the bankruptcy case including contested matters and audits, but not for adversary proceedings. His reliance on that rule suggests that he could not put most of the tasks owed the Debtor in a postpetition contract because the rule requires him to do so much by virtue of filing an appearance. The problem is that Mr. Wu may not have complied with that rule as his initial disclosure of compensation states that he may charge additional fees for the following tasks: "conversion from one chapter to another; reopening a closed case; judicial lien avoidance; amending a petition, schedule or statement post-filing not due to Attorney's fault and attending additional creditors' meetings due to debtor's failure to attend the meeting without a good reason and prior notice." Disclosure of Compensation, Docket 1, p. 8, ¶ 7.

Local Bankruptcy Rule 2091-1(B) provides that in a chapter 7 case where the debtor's attorney has agreed to represent the debtor conditioned on the debtor entering into an agreement after the filing of the case to pay the attorney for services rendered after filing, and the debtor refuses to enter into such an agreement, the court may allow the attorney to withdraw from representing the debtor. The current form of the Local Bankruptcy Rules provides for this at Local Rule 2040-5(B). According to Mr. Wu, he has attempted to comply with Local Bankruptcy Rules as well as paragraph 6 of the Form 2030 Disclosure Statement. Paragraph 6 therein states: "By agreement with the debtor(s), the above-disclosed fee does not include the following services: . . ." Exclusions are allowed.

Mr. Wu's initial Form 2030 disclosure lists the services he promised to perform for the Debtor and the services excluded from the representation. Docket 1, p. 8. Mr. Wu posits that he tried to comply with these rules and forms but they presented tensions. The court does not see

-15-

any tensions or structural issues that are a hindrance to Mr. Wu's obligation to describe his representation of the Debtor in clear language. Local Bankruptcy Rule 2090-5(B) required that only adversary proceedings can be excepted from representation.[8] Mr. Wu's agreement allows him to exclude from representation additional services. The court finds that there is no conflict or tension between the Local Rules, Form 2030 and his obligation to comply with sections 526 and 528 of the Bankruptcy Code. Attorneys may represent debtors for all purposes from the beginning of their relationship with debtors or pursue a bifurcated arrangement.

Mr. Wu also argues that his reliance on Official Form 2030 has led to the confusion herein as it states at paragraph 5 that the attorney represents the debtor in several respects: to analyze the debtor's financial situation and render advice in determining whether to file a petition; and to prepare and file schedules and statements of affairs and a plan if required. The attorney also agrees to represent the debtor at the creditors meeting and the confirmation hearing and to represent the debtor in adversary proceedings. The court notes that paragraph 6 therein allows an attorney to state that in agreement with the debtor, the attorney will not represent the debtor in certain services. There, an attorney can note which services will be provided prepetition and which services will be provided postpetition.

Mr. Wu also argues that the U.S. Trustee accuses him of violating section 526(a)(1) by failing to perform services he promised to provide. He is not accused of not performing those services; his problem is that he structured his agreements in a confusing and misleading manner.

Mr. Wu argues that Form 2030 was not designed to handle split-fee filings because on its face it covers the entire case. The court disagrees. As noted above, that form allows attorneys to

---

[8] The Local Rules wee amended effective September 1, 2024. Local Rule 2040-4(B) reflects that principle.

except services from representation. Mr. Wu noted in paragraphs 6 and 7 of the Form 2030 he submitted that certain services were not to be provided and that he could withdraw if the Debtor failed to sign a postpetition agreement. He added language in paragraph 6(d) that representation was conditioned on Debtor entering into a postpetition agreement. In paragraph 7 he limited the services to be provided, noting that he could charge additional fees for several services. Form 2030 does not prohibit split-fee filings directly or indirectly. Disclosure of Compensation, Docket 1, p. 8.

Mr. Wu argues that the ACH and Wage Assignment forms were not fully executed because he could not predict the amount of a future default. The court gives this response some weight and finds that the condition of those forms did not violate the Code or Rules. In any event, the court would have to be informed of Illinois law on these issues. What does Illinois law require regarding ACH and Wage Assignments? His failure to disclose the ACH agreement in his supplemental disclosure makes his payment procedured misleading. He is not being sanctioned for the contents of that form, only for not disclosing it.

The U.S. Trustee complains that Mr. Wu did not file the Debtor's schedules and statement of financial affairs until the Debtor entered into the Contract for Postpetition Service for $2,600. Therein Mr. Wu agreed to prepare and file schedules and statements. The problem is that he had already agreed to do so in the prepetition Attorney Retention Contract for $0. This amounts to the kind of confusing and misleading statement that Code section 526(a)(3)(A) prohibits.

Has Mr. Wu violated Code section 528 which requires that an attorney execute a contract with a debtor that clearly and conspicuously describes the services to be provided and discloses

the terms of payment? Yes. As noted above, because Mr. Wu promised to perform identical services in each agreement it is difficult to determine whether he was obligated to deliver legal services prepetition for a $0 fee or postpetition for $2,600.

The terms of payment should disclose the source of periodic payments, the dates when the periodic payments would be due and the amount of each payment. The debtor has to agree to the payment terms in writing. *In re Patrick*, 2014 WL 3722005, *3 (Bankr. W.D. La. July 23, 2014). The ACH document delineates the source, timing and amount of payments. However, it was not timely disclosed with the supplemental disclosure, in violation of section 528's mandate that contracts clearly and conspicuously explain the fee charged and its terms of payment.

The U.S. Trustee argues that Mr. Wu engaged in a pattern of violating section 526 for at least six years, citing *In re Zambrano*, 2022 WL 16646807, *6 where a court referred to Mr. Wu's unabated violations of section 526 beginning in 2018. That court sanctioned Mr. Wu for making prepetition security arrangements in the form of blank wage assignments to improve his chance of collecting fees:

> In short, Mr Wu has breached not only his obligations as an officer of the court but also his duties as a fiduciary for his clients by obtaining from them security arrangements which he is not entitled to receive and then certifying to the Court that he had done no such thing. Congress adopted the debt-relief agency rules set forth in Sections 526 through 528 of the Bankruptcy Code precisely to prevent behavior of this sort.

*Id.*

While *Zambrano* was a chapter 13 case and this is a chapter 7 case, Mr. Wu's conduct is a variation on the same theme in connection with his retention, billing and collection practices in that he does not conduct himself in this regard in a clear and understandable manner.

Should the court enjoin him from further such violations? The court will issue an

-18-

injunction.

## Conclusion

The Attorney Retention Contract, the Contract for Postpetition Service, as well as the Wage Assignment document and the ACH agreement are held to be void. The $2,600 fee Attorney Xiaoming Wu charged Debtor Danielle N. Smith is unenforceable and shall be refunded to her on or before February 24, 2025.

This Memorandum Opinion represents the court's Findings of Fact and Conclusions of Law. A separate order will be entered.

Date: January 24, 2025

ENTERED:

J. Cox

**Jacqueline P. Cox**
**Chief Bankruptcy Judge**

-19-